Antonio Charfauros **Manalisay**,
for himself and the other heirs
of Antonia Charfauros Manalisay,
Luis C. Indalecio, for himself and other heirs
of Maria Charfauros Aldan
and Jesus Charfauros Arriola,
for himself and other heirs
of Rufina Charfauros Arriola,
Plaintiffs/Appellants,

v.

**Marianas Public Land Corporation,**
Defendant/Appellee.
Appeal Nos. 96-019 & 96-024 (Consolidated)
Civil Action No. 93-1197
April 30, 1997

Argued and Submitted January 10, 1997

Counsel for Appellants: Reynaldo O. Yana, Saipan.

Counsel for Appellee: Bret Lubic, Saipan. (Law Offices
of Brian W. McMahon)

BEFORE: VILLAGOMEZ and ATALIG, Justices, and
WHITE, Special Judge.

VILLAGOMEZ, Justice:

**I.**

¶1 The plaintiffs, Manalisay, et al. (collectively
"Manalisays") appeal the Superior Court decision which
found that they do not own the land identified as T.D. No.
396 in Saligai, Rota. The court also found that there was
no taking of the property by the government. The court
ruled that the Manalisays are not entitled to any land
exchange pursuant to the Public Purpose Land Exchange
Authorization Act of 1987 ("Act"), 2 CMC § 4141 et. seq.

**II.**

¶2 ■ The Manalisays raise the issue of whether the
Superior Court erred in deciding that T.D. No. 396
belonged to Juan Muna Charfauros, instead of his three
sisters, Maria Charfauros Aldan ("Maria"), Antonia
Charfauros Manalisay ("Antonia"), and Rufina Charfauros
Arriola ("Rufina"). This is a question of fact which is
reviewable under the clear error standard.[1]

¶3 ■ The appellee, Marianas Public Land Corporation
("MPLC"), filed a cross-appeal and raises the issue of
whether an erroneous title determination issued by the
Land Commission, in favor of a private party, can
constitute a taking compensable under the Act. This is a
question of law which we review de novo.

**III.**

¶4 Vicente D. Charfauros, deceased, owned T.D. No.
396 which contains approximately 12 hectares in Saligai,
Rota. He died in 1942, leaving eight children: Antonio,
Juan, Pilar, Ana, Dolores, Maria, Antonia and Rufina.

¶5 In 1958, Juan claimed as his own property, one
hectare of the Saligai property. As a result of that claim,
the government issued T.D. No. 396 declaring that Juan
owns one hectare of the Saligai property. Subsequently,
Juan filed an affidavit with the Land Commission stating
that he owned the entire 12 hectares of the Saligai
property. He then conveyed the entire Saligai property to
his granddaughter, Amanda B. Manglona ("Amanda"), on
May 19, 1978. On June 11, 1984, the Land Commission
issued a Certificate of Title for T.D. No. 396 in favor of
Amanda, containing the entire 12 hectares of the Saligai
property.

**IV.**

¶6 The Manalisays contend that before his death, Vicente
D. Charfauros performed a partida pursuant to which the

---

[1] *Estate of Ayuyu*, 1996 MP 19 ¶3, 5 N.M.I. 31.

59

Manalisays' mothers, Maria, Antonia and Rufina, received the Saligai property while the other siblings received lands somewhere else. They argue that the government's issuance of the Certificate of Title in favor of Amanda constituted a taking of private land by the government. Therefore, the Manalisays claim that they are entitled to be compensated through an exchange of the private land that the government took for a separate government land. The MPLC responds that the issuance of the Certificate of Title is an adjudicatory function of the Land Commission, and does not constitute a taking of private land for public purpose.

¶7 The Superior Court found that Amanda's title to the land derived not from the Certificate of Title issued by the Land Commission, but from the Deed of Gift that she received from Juan Charfauros. In other words, the government did not take Manalisay's land and then give it to Amanda. The court concluded that there was no compensable taking. The Manalisays timely appealed. We have jurisdiction pursuant to 1 CMC § 3102(a).

### V.

¶8 ■ At the outset, we note that the Manalisays did not appeal that part of the Superior Court decision which held that no governmental taking occurred. Instead, they appeal the finding that the land was not given to the three sisters through a partida. They contend that such finding is clearly erroneous for three reasons. Upon review of the record on appeal, we are not persuaded that the court's finding of no partida is clearly erroneous. But more important, even if the Manalisays were found to have owned the land, the issuance of the Certificate of Title in favor of Amanda did not constitute a "taking" which would entitle the Manalisays to receive government land pursuant to the Act. In order for the Manalisays to be entitled to government land under the Act, they have to show (1) that the government acquired ownership or took control of the land and (2) that the taking is done for a public purpose.

¶9 The Act was enacted pursuant to N.M.I. Const. article XI, § 5(b) which provides in relevant part that "[t]he [Marianas Public Land] Corporation may . . . transfer . . . public lands . . . for land exchanges to accomplish a public purpose as authorized by law." The express purpose of the Act is "to facilitate the accomplishment of certain public purposes by authorizing the Marianas Public Land Corporation to enter into agreements by which the government obtains a freehold interest in private land in exchange for passing a freehold interest in public land to the private owners." 2 CMC § 4142.

¶10 The record on appeal does not show either of these two requirements. First, the government did not gain any possession, title, or control over the Saligai property. It merely determined, based on the record before it, that the land had been conveyed to Amanda, entitling her to receive a certificate of title. Second, the record does not show any public purpose to be served by the alleged "taking." The Manalisays have cited *Sablan v. Cabrera*, 4 N.M.I. 133 (1994)[2] suggesting that this case and that case are the same. They are not the same. In *Sablan*, the government gave government land to a first homesteader. After ownership had vested in the first homesteader, the government then gave part of the same land to a second homesteader. That case met both requirements under the Act. First, the government had initial ownership and control over the land. Second, the government gave the land away for a public purpose, to carry out the government homestead program. Thus, the facts of that case are different from the case at hand.

### VI.

¶11 For the above reasons, we **AFFIRM** the decision of the Superior Court.

---

[2] *See* Manalisays Response Brief, No. 96-024, at 5, 8.